**E. L. MURPHY TRUCKING COMPANY,**
Plaintiff and Appellant,

v.

**CLIMATE CONTROL, INC.,** Defendant
and Respondent,

v.

**AMERICAN STANDARD, INC.,** Co-Defend-
ant and Co-Respondent.

No. 13555.

Supreme Court of Utah.

June 24, 1974.

Richard F. Bojanowski, Salt Lake City, for plaintiff and appellant.

Duane B. Welling, Moffat, Welling, Paulsen & Burningham, Salt Lake City, for Climate Control.

Rendell N. Mabey, Chris Wangsgard, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for American Standard.

TUCKETT, Justice:

This is an action brought by the plaintiff, E. L. Murphy Trucking Company, an interstate motor carrier to recover freight charges for the transportation of certain shipments of air-conditioning equipment. In the court below cross-motions for summary judgment were made and the court granted the motion of the defendant Climate Control and the motion of American Standard and denied the motion of the plaintiff. Plaintiff is here seeking a reversal.

In 1971, Climate Control purchased from American Standard a number of large air-conditioning units. The purchase contract provided that American Standard would pay the freight charges for shipment of the units from Carteret, New Jersey, to Salt Lake City, Utah. American Standard arranged with a New Jersey firm called B & M Trading Company to have the equip-

ment shipped to Salt Lake. B & M Trading in turn arranged with East Coast Drayage Company, also a New Jersey Company, to ship the units. American Standard paid B & M Trading Company the amount of the shipping charges. The East Coast Drayage Company made arrangements with the plaintiff, E. L. Murphy Trucking Company, to transport the equipment. The plaintiff prepared four bills of lading, one for each of the four truck loads. One of the bills of lading contained the notation that the freight charges were prepaid, one of the bills indicated the charges were to be prepaid and the other two bills omitted any notation as to freight charges. Each of the four bills of lading stated that East Coast Drayage Company was to be billed. The four truck loads of equipment arrived at Salt Lake City between November 16 and November 19, 1971, and were delivered to Climate Control. At the time of delivery to Climate Control the plaintiff made no demand upon Climate Control or American Standard for payment of the shipping charges.

The plaintiff billed East Coast Drayage Company for the shipping charges on November 17 and 18, 1971, and for several months thereafter attempts were made by the plaintiff to collect from East Coast Drayage. After a period of some four months the plaintiff discovered that East Coast Drayage Company was in financial difficulties. On July 11, 1972, the plaintiff made demand upon American Standard for payment of the charges. In September 28, 1972, plaintiff demanded payment of the shipping charges from Climate Control and it has now initiated these proceedings against Climate Control on the theory that it is liable for the shipping charges as consignee. After receipt of the shipments Climate Control paid American Standard for the equipment, including shipping charges. Plaintiff delivered the equipment to Climate Control without any reservation and without demanding payment of the freight charges.

■ It is the plaintiff's contention here that Section 223 of the Motor Carrier Act, 49 U.S.C., creates an absolute liability upon Climate Control as consignee to pay the freight charges. Pertinent part of that section is as follows:

No common carrier by motor vehicle shall deliver or relinquish possession at destination of any freight transported by it in interstate or foreign commerce until all tariff rates and charges thereon have been paid, except under such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges, including rules and regulations for weekly or monthly settlement, and to prevent unjust discrimination or undue preference or prejudice:

.    .    .    .    .    .

It appears that the intent of congress in adopting the section was to curb preferential discrimination among shippers by interstate motor carriers.

■ This is not a discrimination case as dealt with in Pittsburgh, Cincinnati, Chicago and Saint Louis Railway Company v. Fink[1] where the carrier undercharged the consignee of a shipment of goods and subsequently sued him for the unpaid balance of the full tariff rate. The record here discloses that American Standard paid in full the shipping charges to B & M Trading Company which arranged with the East Coast Drayage Company to ship the equipment. It appears that the action of the plaintiff in delivering the goods upon bills of lading which indicated that East Coast Drayage was to be billed for the shipping charges and also one of the bills being marked prepaid and another to be prepaid and the delivery being made without any demand for payment of the freight deprived Climate Control from a means of protecting itself from being required to pay twice. The record supports the conclusion that had not Climate Control relied upon what in effect amounts to a representation that shipping charges had been pre-

1.  250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151.

paid it could have refused to pay American Standard without further assurances shipping charges were in fact prepaid in accordance with the terms of the purchase contract between Climate Control and American Standard.[2]

We conclude that the trial court was correct in its entering judgment in favor of the defendant and co-defendant and that decision is affirmed. Respondents are entitled to costs.

CALLISTER, C. J., and HENRIOD, ELLETT and CROCKETT, JJ., concur.

2. Missouri Pacific R.R. Co. v. National Milling Co., 3 Cir., 409 F.2d 882; Consolidated Freightways Corp. v. Eddy (Or.1973), 513 P.2d 1161; Consolidated Freightways Corp. v. Admiral Corp., 7 Cir., 442 F.2d 56.