Lisa MARAKIS, Plaintiff and
Appellant,

v.

STATE FARM FIRE AND CASUALTY
COMPANY, Defendant and Appellee.

No. 20855.

Supreme Court of Utah.

Nov. 25, 1988.

Wayne B. Watson, Beverley A. Ramsey, Provo, for plaintiff and appellant.

Ray Phillips Ivie, Provo, for defendant and appellee.

HALL, Chief Justice:

Plaintiff Lisa Marakis appeals a summary judgment of no cause of action for injuries sustained in an accident proximately caused by another vehicle. The issue presented is whether in order to recover under Utah's uninsured motorist statute, the "hit-and-run" vehicle must actually strike the insured's car or whether it is sufficient that the unidentified motorist was the proximate cause of the accident and resulting injury.

Marakis' complaint alleged that while driving on September 4, 1982, she encountered an automobile which had crossed over the center line and was traveling in the wrong lane toward her. To avoid what she perceived as an impending collision, Marakis steered off the road and hit a fence. The other vehicle continued on without stopping. Upon receiving Marakis' claims for the accident and resulting injuries, defendant State Farm refused to pay the damages on the ground that Marakis' car had not been actually hit by the unidentified vehicle. According to State Farm, the absence of physical contact precluded any claim under the insurance policy.

At the time of the accident, Utah's uninsured motorist statute did not define the term "hit-and-run." However, State Farm's insurance policy included the fol-

lowing in its definition of "uninsured motorist": "2. a 'hit-and-run' land motor vehicle whose owner or driver remains unknown and which strikes: a. the insured or b. the vehicle the insured is occupying and causes bodily injury to the insured." (Emphasis omitted.)

The trial court concluded that "the unidentified vehicle is not a 'hit-and-run' motor vehicle within the meaning of that term as used in Section 41–12–21.1, Utah Code Annotated, or within the generally accepted meaning of the term." The trial court also found that the generally accepted definition of "hit-and-run" and the definition as found in the subject insurance policy "must be accepted to mean that physical contact is required in order to create any liability under the policy."

Utah Code Ann. § 41–12–21.1 (1981) (repealed 1985) provided in part that no automobile liability insurance policy would be issued or renewed in this state unless coverage was provided "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom."

Marakis contends that section 41–12–21.1 allowed parties to recover when hit-and-run vehicles did not collide with other vehicles and urges this Court to follow those jurisdictions that have so ruled in interpreting similar statutes.[1] On the other hand, State Farm claims that the appeal is moot given the 1985 legislative change which specifically addressed the physical contact rule. It cites Utah Code Ann. § 31A–22–305(5) (1987), which provides:

When a covered person claims an insured motor vehicle under Subsection (2)(b)

proximately caused an accident without touching the covered person or the vehicle occupied by the covered person, then the covered person shall show the existence of the other motor vehicle by clear and convincing evidence, which shall consist of more than the covered person's testimony.

In light of the foregoing statutory provision, State Farm contends that the legislature has evidenced that it is the public policy of this state that in cases such as this, recovery by an insured is permitted only where the existence of the unidentified vehicle is established by clear and convincing proof consisting of something more than the testimony of the insured.[2]

State Farm further contends that even in the absence of the recent legislative enactment, the construction urged by Marakis is erroneous for two reasons: (1) the contract provision is clear and unambiguous, and (2) the purpose for requiring physical contact under such statutes is to effectuate the public policy of stabilizing the rising cost of automobile insurance by preventing fraudulent claims as well as barring those actions difficult to defend due to the lack of physical evidence.

■ Turning first to the matter of mootness, at the time of Marakis' accident, the uninsured motorist statute in Utah did not require that her claim be corroborated by evidence other than her own testimony, nor did it require physical contact before her hit-and-run uninsured motorist claim could be paid. The new statute did not take effect until July 1, 1986, and by its terms is not retroactive and does not purport to clarify prior legislative intent.

**1.** See, e.g., State Farm Fire & Casualty v. Lambert, 291 Ala. 645, 285 So.2d 917 (1973); Farmers Ins. Exch. v. McDermott, 34 Colo.App. 305, 527 P.2d 918 (1974); Brown v. Progressive Mut. Ins. Co., 249 So.2d 429 (Fla.1971); DeMello v. First Ins. Co. of Haw., 55 Haw. 519, 523 P.2d 304 (1974); Surrey v. Lumbermens Mut. Casualty Co., 384 Mass. 171, 424 N.E.2d 234 (1981); Halseth v. State Farm Mut. Auto. Ins. Co., 268 N.W.2d 730 (Minn.1978); Biggs v. State Farm Mut. Auto. Ins. Co., 569 P.2d 430 (Okla.1977); Pin Pin H. Su v. Kemper Ins. Cos., 431 A.2d 416

(R.I.1981); Clark v. Regent Ins. Co., 270 N.W.2d 26 (S.D.1978).

**2.** In deciding this case, because the issue is not before us, we do not address the constitutionality and/or legal applicability of this statute as it regards this Court's constitutional mandate and responsibility to establish and implement rules of evidence. See Utah Const. art. VIII, § 4 (1985).

The statute in effect at the time of trial did not require corroboration, and the issue before the trial court on summary judgment was not whether Marakis corroborated her claim. Rather, the issue before the trial court and the issue properly on appeal is whether physical contact is required as a matter of law in all hit-and-run accidents, including those where the parties do not dispute the existence of a second vehicle. It is conceivable that if section 31A–22–305(5) had application, Marakis could have corroborated her claim, but to adopt State Farm's argument and affirm summary judgment on the basis that Marakis failed to anticipate and prepare for statutory requirements not even in existence at the time summary judgment was granted is unreasonable. We conclude that section 31A–22–305(5) does not apply in this case and that the issue is not moot.

The policy underlying uninsured motorist statutes is focused toward compensating victims for injuries inflicted by those from whom damages cannot be recovered. With this principle in mind, the real issue before us is not whether there was physical contact between the vehicles, but rather whether the offending motorist has insurance *available* for the protection of the injured party, for whose benefit the statute was devised.[3] As was observed in *Surrey v. Lumbermens Mutual Casualty Company:*[4]

> The aim of the uninsured motorist statute is to minimize the catastrophic financial loss for victims of automobile accidents caused by the negligence of uninsured tortfeasors. We believe it is wholly inconsistent with this broad remedial purpose to permit the insurer to evade mandated coverage by erecting an artificial, arbitrary barrier to recovery.[5]

In the instant case, we similarly conclude that to establish physical contact as a condition precedent to recovery would be in derogation of the purpose and intent of the uninsured motorist statute and would create an arbitrary barrier to the assertion of a valid claim. Marakis should not be barred from relief by her inability to identify the tort-feasor and her unwillingness to collide with the vehicle which caused the accident.

Other courts which have upheld the physical contact requirement have done so based on the premise that the term "hit-and-run" is synonymous with physical contact.[6] Such a rigid construction is unmindful of various other uses of the term that do not necessitate physical contact. Beginning in an era which predates the automobile, the term "hit-and-run" continues to be used in the sport of baseball. In baseball parlance, the term denotes a play in which a base runner starts for the next base as the pitcher starts to pitch and the batter attempts to hit the ball; in military operations, the term is ascribed to small military units or troops which take quick, specific action rather than permanent engagement; and in the field of commerce, the term is used to describe a type of merchandising.[7] In each instance, the applicability of the term does not hinge on the successful completion of the play (whether the batter hit the ball), the operation, or the sale. Similarly, the term "hit-and-run" aptly includes characterization of an accident which is caused without physical contact by one who leaves the accident scene without identifying him- or herself.

Apparently, the sole justification for the physical contact requirement is its alleged evidentiary value in providing objective evidence which corroborates the victim's account of the accident. However, its rejection does not relieve the insured's burden of proving his or her case. If the insured can prove to the satisfaction of the fact finder that the accident occurred, he or she

---

3. *Farmers Ins. Exch.,* 34 Colo.App. at 308–09, 527 P.2d at 920; *Brown,* 249 So.2d at 430.

4. 384 Mass. 171, 424 N.E.2d 234.

5. *Id.* at 177, 424 N.E.2d at 238 (citations omitted).

6. *See, e.g., Ferega v. State Farm Mut. Ins. Co.,* 15 Ill.App.3d 246, 248, 303 N.E.2d 459, 461 (1973); *Hayne v. Progressive N. Ins. Co.,* 115 Wis.2d 68, 73, 339 N.W.2d 588, 590 (1983).

7. *Webster's Third New International Dictionary* (unabr. 1961).

may be entitled to recover regardless of the actuality of physical contact.[8]

State Farm argues that the physical contact requirement insures against fraudulent claims. However, as was observed in *DeMello v. First Insurance Company of Hawaii*,[9] this is not necessarily correct:

> We also note the clear possibility of instances in which the contractually imposed requirement will not fulfill its justifiable objective of eliminating fraudulent claims. A claimant with a fraudulent claim can bolster the same, if necessary, by damaging his own car to leave apparent proof of the requisite "physical contact" with a non-existent "unidentifiable vehicle." The contractual "physical impact" requirement thus not only sweeps too broadly, but also not broadly enough, to accomplish its only justifiable and statutorily permissible purpose, the prevention of frauds.[10]

Utah Code Ann. § 41–6–29(a) (1981) (amended 1983, 1986 & 1987) further supports the view that Utah law does not require an actual collision to recover under the uninsured motorist statute:

> The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 41–6–31.

Since, under this provision, the Utah legislature did not require physical contact as a prerequisite for determining when one must stop and render assistance, it would be inconsistent to read such a requirement into the hit-and-run clause of the uninsured motorist statute.

▮ We reject the physical contact requirement as a condition precedent to recovery under Utah's uninsured motorist statute, and we hold that the physical contact requirement contained in State Farm's

policy of insurance is in derogation of the statute and is therefore void.

We reverse and remand for further proceedings consistent with this opinion. Costs to appellant.

STEWART, DURHAM and ZIMMERMAN, JJ., concur.

HOWE, Associate Chief Justice (dissenting).

I dissent. Since Utah Code Ann. § 41–12–21.1 as it existed when plaintiff sustained her injuries did not define a "hit-and-run" motor vehicle, I think that the parties to the insurance contract were free to employ any reasonable definition in the policy. I agree with the trial judge, Judge Bunnell, that the definition in the policy which requires a striking is "most reasonable."

The bases of the majority opinion's holding that the legislature did not intend to require striking are flawed in several respects. First, it is not helpful or relevant to our analysis here to rely on the meaning of "hit-and-run" in baseball, military operations, or merchandising. We are dealing with a claimed automobile accident and an insurance policy. We should confine ourselves to that context. In passing, however, it should be observed that even in baseball, a batter does not get a "hit" unless he strikes the ball and reaches first base. We recently stated in *Johnson v. Utah State Retirement Board*, 91 Utah Adv.Rep. 8, 9 (Sept. 19, 1988), "A fundamental principle of statutory construction is that unambiguous language in the statute itself may not be interpreted so as to contradict its plain meaning." The majority fails to observe this simple principle. When the legislature said "hit-and-run" I do not believe it can be interpreted to mean "miss-and-run" or "cause-and-run." It is significant that in 1985 when the legislature wanted to cover accidents where there was no striking, it had no difficulty in expressing its intention by providing in sec-

---

8. *Surrey*, 384 Mass. at 177–78, 424 N.E.2d at 238–39; *Biggs*, 569 P.2d at 432–34; *Brown*, 249 So.2d at 430.

9. 55 Haw. 519, 523 P.2d 304.

10. *Id.* at 529, 523 P.2d at 310.

tion 31A–22–305(5) (1986, Supp.1988) for insurance coverage where an accident was caused "without touching the covered person or the vehicle occupied by the covered person." The words "hit-and-run," which require an actual striking, were entirely deleted. It is readily apparent to me that the intent of the 1985 amendment was to expand coverage, not simply to provide for existing coverage in new language as the majority concludes. We should not presume that the legislature indulges in useless acts.

The majority falls into the same error that the court did in *Pin Pin H. Su v. Kemper Insurance Co.*, 431 A.2d 416, 419 (R.I.1981), where it stated that "hit-and-run" is a "shorthand colloquial expression" and is not to be read literally. Such statements run counter to my experience as a lawyer, legislator, and judge that the legislature does not use colloquial terms in legislation, but searches for and uses definite words and phrases. We must assume that the legislature meant what it said when its language is not ambiguous and does not produce an unreasonable result.

In a well-reasoned opinion, the Supreme Court of Wisconsin in *Hayne v. Progressive Northern Insurance Co.*, 115 Wis.2d 68, 339 N.W.2d 588 (1983), cited to the definition of "hit-and-run" in three leading dictionaries and observed that they were uniform in indicating that "hit-and-run" included two elements: a hit or a strike and a run or a fleeing. After noting that words in a statute are to be given their common and accepted meaning when not ambiguous, the court refused to hold that "hit-and-run" includes instances when there is no hitting. See *Grace v. State Farm Mutual Automobile Insurance Co.*, 197 Neb. 118, 246 N.W.2d 874 (1976), and *Ferega v. State Farm Mutual Automobile Insurance Co.*, 15 Ill.App.3d 246, 303 N.E.2d 459 (1973), *aff'd*, 58 Ill.2d 109, 317 N.E.2d 550 (1974), to the same effect. See also *Black's Law Dictionary* 657 (5th ed. 1979), which defines a hit-and-run accident as, "*Collision* generally between motor vehicle and pedestrian or with another vehicle...." (Emphasis added.)

The majority quotes with approval from *Surrey v. Lumbermens Mutual Casualty Co.*, 384 Mass. 171, 177, 424 N.E.2d 234, 238 (1981): "The aim of the uninsured motorist statute is to minimize the catastrophic financial loss for victims of automobile accidents caused by the negligence of uninsured tortfeasors." The majority then proceeds to conclude "that to establish physical contact as a condition precedent to recovery would be in derogation of the purpose and intent of the uninsured motorist statute and would create an arbitrary barrier to the assertion of a valid claim." I submit that if requiring an actual striking is an "arbitrary barrier," the place to remove the barrier is in the legislature and not in the courts. As previously noted, the legislature in 1985 removed this "barrier." Further, it appears that the Massachusetts statute which was under construction in *Surrey v. Lumbermens Mutual Casualty Co.* mandated the inclusion of uninsured motorist coverage in every automobile insurance policy. Therefore, it is understandable that the court would not look with favor upon any limiting language in the policy itself. However, in Utah, uninsured motorist coverage is not mandated but is optional. Thus, the reasoning of the Massachusetts court is not compelling here. There is no evidence or legislative history before us that would lead me to believe that uninsured motorist coverage offered in Utah was intended to close every gap in the ways in which one might be injured while operating a motor vehicle. Furthermore, according words of a statute their ordinary and common meaning can never be properly termed "artificial" or "arbitrary." I am in agreement with the Wisconsin court when in deciding *Hayne v. Progressive Northern Insurance Co.* it stated that it was the prerogative of the legislature, not that court, to make public policy changes in insurance coverage. See a similar expression of judicial restraint in *Ferega v. State Farm Mutual Insurance Co.*

Another serious flaw in the analysis of the majority opinion is in its attempt to draw upon section 41–6–29 for strength. That statute requires the driver of a ve-

hicle involved in an accident resulting in injury or death to any person to immediately stop at the scene. The majority argues that because this statute does not require physical contact as a condition for determining when one must stop, "it would be inconsistent to read such a requirement into the hit-and-run clause of the uninsured motorist statute." The error in this strained reasoning is that the two statutes deal with different subjects and are worded entirely different from each other. The uninsured motorist statute employs the language "hit-and-run," whereas section 41–6–29 more broadly refers to "an accident" which obviously does not require a striking. The two statutes were enacted by the legislature at different times and in different sessions, and there is nothing before us that would justify giving the close connection between the two which the majority reaches for.

I would affirm the summary judgment.